**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VAUGHN COLLINS, | : |
| Plaintiff, | : Civ. No. 21-2034 (GC) (JTQ) |
| v. | : |
| MONMOUTH COUNTY CORRECTIONAL INSTITUTE et al., | : **OPINION** |
| Defendants. | : |

**CASTNER, District Judge**

      **THIS MATTER** comes before the Court on a motion for summary judgment (ECF No. 54) brought by Defendants Monmouth County Correctional Institution ("MCCI"), Monmouth County, Officer B. Jacobs, Officer FNU Ruchalski, Officer S. Giglio, Supervisor F. Giammarino, and Investigator James Robertson. The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' motion for summary judgment is **DENIED** without prejudice. The Court refers this matter to the Magistrate Judge for settlement discussions and administratively terminates this case pending the outcome of those settlement discussions.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    **a. Plaintiff's Sworn Testimony about the Assaults**

Plaintiff alleges in this action that he was assaulted by Officer Jacobs and Officer Giglio on October 29, 2020, at MCCI in the presence of Officer Ruchalski. *See* Generally Third Amended

Complaint. The following facts are taken from Plaintiff's sworn deposition testimony, and the Court views these facts in the light most favorable to him for purposes of this motion.

Prior to the alleged assault, Plaintiff's cell door was open in order for Officer Quick and an inmate named Dudley to transfer Plaintiff his legal papers. (*See* Plaintiff's Counterstatement of Material Facts ("CSMF") ¶¶ 2-3 (citing Pl. Dep. T22:21-25; T25:24-25).) Plaintiff asked Officer Quick to allow him to use the computer on the tier so he could access Lexus Nexus before he went to court. (CSMF ¶ 4 (citing Collins Dep. T22:25, T23:1-7).) Officer Quick told Plaintiff that he had to lock in because the food trays had arrived. (CSMF ¶ 5 (citing Pl. Dep. T23:10-13).) Plaintiff obeyed the order to lock in by going into his cell. (CSMF ¶ 6 (citing Pl. Dep. T23:10- 15).)

When Plaintiff went into his cell, Officer Jacobs stepped a foot into the cell. (CSMF ¶ 7 (citing Pl. Dep. T23:10-20).) Officer Jacobs stated the following to Plaintiff: "I don't care about everybody else using the computer room and don't be getting loud on tier about the computer because everybody's not going in there." (CSMF ¶ 8 (citing Pl. Dep. T25:1-7).) Plaintiff told Officer Jacobs that he didn't care about anyone else and needed to go to the computer room before he went to court. (*See* Pl. Dep. T25:8-10; *see also* CSMF ¶ 9 (citing *id.*).) At this point Officer Jacobs left the cell, and the cell door closed behind Jacobs. (CSMF ¶ 10 (citing Pl. Dep. T25:1-14).)

Plaintiff then screamed the following to Officer Jacobs: "So when – when can I go over there to use the computer?" CSMF ¶ 11 (citing Pl. Dep. T26:4-6).) At this point, Officer Jacobs told Officer Ruchalski at the control panel to "Pop 103," i.e., open Plaintiff's cell door. (CSMF ¶ 12 (citing Pl. Dep. T26:10-12).) Officer Ruchalski opened Plaintiff's cell door. (CSMF ¶ 13 (citing Pl. Dep. T26:13).)

Officer Jacobs entered Plaintiff's cell again. (CSMF ¶¶ 14-15 (citing Pl. Dep. T26:13-14; T26:18-20).) Officer Jacobs stated to Collins: "Listen, man, I'm not going to tell you again. I'm not playing with you. Don't be yelling out on my tier. . . ." (CSMF ¶ 16 (citing Collins Dep. T26:14-16).) Officer Jacobs also said to Collins: "Look bro, I'm not going to keep telling you, don't be yelling on my tier about the computers because I don't want everybody to know that you're going there to use the computer." (CSMF ¶ 17 (citing Collins Dep. T27:1-4).)

Plaintiff admittedly did not obey Officer Jacobs' order to stop yelling on the tier; instead he continued to shout, stating, "I don't care about everybody else. I'm trying to use the computer so I can go -- because I have to go to court." (CSMF ¶ 18 (citing Pl. Dep. T27:5-8).) Plaintiff testified that Officer Jacobs stated the following in response: "I'm not playing with you. You do it again, I'm gonna slap the shit out of you." (CSMF ¶ 19 (citing Collins Dep. T27:10-12).) At this point, Officer Jacobs left the cell, and the cell door closed behind him. (CSMF ¶ 20 (citing Pl. Dep. T27:15-16).)

After Officer Jacobs left his cell, Plaintiff went back to his cell door and yelled the following: "Yo man, what's up, man? It's almost nine o'clock. They're going to call me for court. When can I use the computer? They told me I could use the computer room. I got paperwork from the law library that I have to access the computer with. I need to use the computer. What's up?" CSMF ¶ 21 (citing Pl. Dep. T27:16-23).)

At this point, Officer Jacobs returned to Plaintiff's cell door, the cell door opened, and Officer Jacobs entered his cell again. (CSMF ¶¶ 22-23 (citing Pl. Dep. T28:12; T28:12-18).) According to Plaintiff, Officer Jacobs stated the following to him: "Didn't I tell you I wasn't playing?" (CSMF ¶ 24 (citing Pl. Dep. T28:19-21).) Plaintiff testified that Officer Jacobs punched him in the mouth, grabbed his hair and pulled a dread out, and punched Plaintiff on his ear,

resulting in a laceration in the ear. (CSMF ¶ 25 (citing Pl. Dep. T28:22-25, T29:1-6; *see also* Pl. Dep. T54:15-25).) Plaintiff also testified that his tooth was punched out. (CSMF ¶ 27 (citing Pl. Dep. T14:18-20).) Plaintiff testified that his mouth and ear were bleeding when he went to the medical station after the incident. (CSMF ¶ 28 (citing Pl. Dep. T13:8-18).)

It appears undisputed that there is no video evidence supporting Plaintiff's account of this alleged assault by Officer Jacobs. Plaintiff testified during his deposition that his criminal defense counsel sent a subpoena to the jail for video footage from 7 a.m. onward, but he received only three minutes of video beginning at 9:28 a.m. (*See* Pl. Dep. 31:18-32:5.)

According to Plaintiff, Officer Jacobs left Plaintiff's cell, and Plaintiff went and stood at the door of his cell. CSMF ¶¶ 30-31 (citing Pl. Dep. T31:12-13; T32:8-9).) As Plaintiff was standing at the door of his cell, an officer gave the order for all the inmates to lock in. (CSMF ¶ 32 (citing Pl. Dep. T32:9-15).) Plaintiff continued to stand at the door of his cell as all the inmates locked in. (CSMF ¶ 33 (citing Pl. Dep. T32:13-15).) Meanwhile, Officers Jacobs and Ruchalski both walked off the tier accompanying an inmate who had been in the cell next door to Plaintiff's cell, leaving no officers on the tier. (CSMF ¶ 34 (citing Pl. Dep. T33:9-25, T34:1-3)).

Approximately 5-10 minutes later, Officer Ruchalski returned to the tier, and Plaintiff asked Ruchalski if he could see a sergeant since he was bleeding. (CSMF ¶¶ 35-36 citing Pl. Dep. T34:4-7; T34:8-12).) Officer Ruchalski did not respond to Plaintiff's request to see the sergeant. (CSMF ¶ 37 (citing Pl. Dep. T34:13).)

Another 5-10 minutes later, Officer Jacobs returned to the tier accompanied by Officer Giglio. (CSMF ¶ 38 (citing Pl. Dep. T34:15-17).) Officer Giglio stayed by the microwave, and Officer Jacobs came to the pen. (CSMF ¶¶ 39-40 (citing Pl. Dep. T34:18-22; T34:23).) Plaintiff testified that he stayed by his cell door and never left his cell door. (CSMF ¶ 41 (citing Pl. Dep.

T34:23-25, 35:1-2).) As Officer Jacobs made his way to Plaintiff's cell, Officer Giglio began putting on his gloves. (CSMF ¶¶42-43 (citing Pl. Dep. T35:3-4; T35:7-11).)

Officer Jacobs told Officer Ruchalski to open Plaintiff's cell door, and the door opened. (CSMF ¶¶ 44-45 (citing Pl. Dep. T36:13-18; T36:11-12). Plaintiff testified that when his cell door opened, Officer Jacobs grabbed his jumper and fell on the ground. (CSMF ¶ 46 (citing Pl. Dep. T36:19-21).) According to Plaintiff's testimony, Officer Jacobs put Plaintiff in a chokehold and pulled Plaintiff down on top of him. (CSMF ¶¶ 47-48 (citing Pl. Dep. T36:19-22; T60:13-22).) Officer Jacobs pulled Plaintiff down to the ground outside the cell. (CSMF ¶ 49 (citing Pl. Dep. T60:18-21).) Plaintiff testified that Officer Giglio ran over to his location and started punching him. (CSMF ¶ 50 (citing Pl. Dep. T60:18-23).) Plaintiff further testified that Officer Giglio punched him in the face multiple times, resulting in a "busted" nose. (CSMF ¶ 51 (citing Pl. Dep. T61:9-16).) Plaintiff testified that he never resisted the officers. (CSMF ¶ 52 (citing Pl. Dep. T63:13-14).) There is video evidence of this incident; however, the video provided by Defendants has a "broken index," and the Court is unable to view it.

### b. Plaintiff Amends His Complaint to Conform to his Deposition Testimony

Plaintiff submitted his original pro se complaint on or about February 2, 2021. (ECF No. 1, Original Complaint at 8.) In the original complaint, Plaintiff alleged that Officer Jacobs "came in [his] room" and assaulted him. (Complaint at 5.) Plaintiff further alleged that after the assault by Officer Jacobs, other officers came in and started punching and kicking him. *Id.* at 6. Plaintiff further alleged that his defense attorney subpoenaed the video, but the video evidence he received was "edit[ed]" and "did not show the hole [sic] mourning [sic] like we requested." (*Id.* at 6.)

Plaintiff sought appointment of pro bono counsel and also sought leave to amend his complaint. (*See* ECF Nos. 12-14.) Plaintiff subsequently retained Peter Kober, Esq. ("Mr.

5

Kober"), who entered an appearance in this matter and submitted an amended complaint on August 10, 2021. (ECF Nos. 15-16.) The Amended Complaint also alleged that Officer Jacobs entered Plaintiff's cell three times, assaulted him in his cell during the third entry, and dragged him out of the cell. Thereafter, Officer Giglio allegedly joined in the assault. (*See* Amended Complaint ¶¶ 34-48.)

Mr. Kober submitted a second amended complaint with consent of opposing counsel. (ECF Nos. 31-32.) The second amended complaint similarly alleged that Officer Jacobs entered Plaintiff's cell three times and assaulted Plaintiff in his cell during the third entry. (Second Amended Complaint at ¶¶ 34-40.) The second amended complaint further alleged that Officer Jacobs brought Plaintiff to the ground inside the cell and dragged Plaintiff out of his cell, where Officer Giglio joined in the assault. (*Id.* at ¶¶ 43-48.)

Defendants deposed Plaintiff on November 28, 2022. (*See* ECF No. 54-6, Pl. Dep. at 1; ECF No. 37-2, Certification of Peter Kober ¶ 5.) On December 12, 2022, Plaintiff filed a motion for leave to submit a third amended complaint through counsel. The motion attached a Proposed Third Amended Complaint and a redlined copy of the proposed changes. The Third Amended Complaint alleges that Officer Jacobs entered Plaintiff's cell twice prior to 9:25 a.m., and entered his cell a third time at approximately 9:28 a.m. (*See* ECF No. 37-4, Third Amended Complaint (redline) at ¶¶ 30-39). According to the Third Amended Complaint, when Officer Jacobs entered the cell the second time at approximately 9:25 a.m., he assaulted Plaintiff by punching him about the face and head. *See id.* at ¶ 40. The Third Amended Complaint alleges that Officer Jacobs entered Plaintiff's cell a third time at approximately 9:28 a.m., and forcefully took Plaintiff to the ground outside the cell. (*Id.* at ¶ 43.) These changes are consistent with Plaintiff's deposition

testimony that 1) Officer Jacobs assaulted him prior to the 9:28 a.m. incident captured on video footage, and 2) that the alleged assault occurred outside his cell.

Mr. Kober filed a certification under penalty of perjury stating that he attended Plaintiff's deposition and realized that Plaintiff's testimony differed from the amended complaints due to Mr. Kober's "failure to get the facts absolutely right from a review of the documentation, including the pro se complaint[.]" (ECF No. 37-2, Kober Cert. ¶¶ 6-7.) Mr. Kober averred that the proposed text of the Third Amended Complaint was "a good faith attempt . . . to conform plaintiff's pleading to his deposition testimony" and did not violate the Scheduling Order because it did not seek to add claims or parties. (*Id.* at ¶¶ 8-10.)

Defendants opposed the motion to amend, arguing, without reference to Rule 15, that they had defended the case based on the allegations in the prior complaints and that there is no longer video evidence to support Plaintiff's testimony about Officer Jacob's alleged initial assault. (*See* ECF No. 41.) On June 20, 2023, the Magistrate Judge analyzed Defendants' arguments under the Rule 15 standard and granted the motion to amend. (*See* ECF No. 46).

### c. Defendants Contend that Plaintiff Amended his Complaint After Viewing the Video Evidence and that other Evidence Undermines his Claims

Defendants emphasize that Plaintiff's deposition testimony does not conform to the allegations in his superseded complaints and that Plaintiff's deposition testimony is also, at times, inconsistent on the issue of whether one or two assaults occurred. (*See* Defendants' Statement of Material Facts ("DSUMF") at ¶¶ 1-9; *id.* at ¶¶ 11-13.) Defendants further contend that Plaintiff filed a Third Amended Complaint only after the original allegations were contradicted by the video footage. (*See* DSUMF ¶¶ 3-7.)

In their Statement of Undisputed Material Facts ("DSUMF"), Defendants also point to evidence they believe undermines Plaintiff's version of events. Although Defendants do not

7

provide any facts from the "Use of Force Reports" submitted by Officer Jacobs, Officer Giglio, and Officer Frank Sicoli, they contend that these reports are "consistent" and signed by the officers' supervisor Sergeant F. Giammarino, who is also a Defendant in this action. (DSUMF ¶¶ 15-16 (citing Exhibit F).)

Defendants also emphasize that Investigator Robinson determined that there was cause to charge Plaintiff with aggravated assault on a law enforcement officer and that Investigator Robinson found that the video evidence was consistent with the report of Officer Jacobs and the supplemental report of Officer Giammarino. (DSUMF ¶ 21 (citing Exhibit F).)

Defendants also claim that the "litany of bad acts" alleged in the Third Amended Complaint are refuted by the video evidence. (DSUMF ¶ 23 (citing Exhibit Ex B).) For instance, Defendants contend that Officer Ruchalski is not present outside cell 105, but is across the Command Center controlling the cell doors. (*Id.* at n. 1.) Defendants also contend that Officer Jacobs never fully entered Plaintiff's cell as he restrained Plaintiff and that Plaintiff provoked Officer Jacobs by charging at him with his hand raised and that Officer Jacobs took "reasonable defensive measures" to restrain Plaintiff. (*Id.* at n. 1.) Defendants further contend that the Officers' statements show that it took three officers to restrain Plaintiff, which belies his claim that he did not resist. (*Id.* at n 1.) Finally, Defendants contend that Officer Giglio assisted Officer Jacobs in subduing Plaintiff and claim that the gloves purportedly worn by Officer Giglio are not visible in the video. (*Id.* a n.1.)

### d. The Summary Judgment Motion

On October 16, 2023, Defendants moved for summary judgment. (ECF No. 54.) On November 13, 2023, Plaintiff opposed the motion for summary judgment. (ECF No. 56). Defendants did not file a reply brief.

On May 21, 2024, the Court administratively terminated the motion for summary judgment because Defendants cited to the video footage as Exhibit A to their motion, but they did not provide a copy of the video footage to the Court. (ECF No. 57.) The Court directed Defendants to provide the video evidence within 14 days. On June 14, 2024, Defendants wrote to the Magistrate Judge seeking an extension of time until June 17, 2024, to provide the video evidence. (ECF No. 58.) The Court subsequently received a copy of the video evidence, but the file is corrupted, and the Court is unable to view it. Because the Court has provided ample opportunity for Defendants to support their motion, the Court decides the motion for summary judgment without the video footage.[1]

## II.   STANDARD OF REVIEW

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

---

[1] The Court also declines to consider Defendants' "Exhibit D: Defendants attorney certification of observation of factual elements of video evidence," as a substitute for the actual video footage.

A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "If reasonable minds could differ as to the import of the evidence," summary judgment is not appropriate. *See id.* at 250-51. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," no genuine issue for trial exists and summary judgment shall be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### III. DISCUSSION

Plaintiff's Third Amended Complaint alleges 10 separate counts for relief under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") and asserts various theories of liability against Defendants. Defendants filed an eight-page brief in support of their summary judgment motion that does not address each count individually. The brief cites to both the motion to dismiss and summary judgment standards and argues primarily that Plaintiff should not be permitted to change his story two years after the alleged incident (or incidents) occurred. Defendants also argue that Plaintiff's version of events is contradicted by "credible" evidence, including the corrections officers' contemporaneous reports, the investigator's report, and the video footage.

Although Defendants seek to bind Plaintiff to the facts alleged in his superseded complaints, these allegations do not constitute binding judicial admissions at summary judgment. It is well established "that judicial admissions may be withdrawn by amendment." *West Run*

*Student Housing Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (citing *Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956)) (recognizing that "withdrawn or superseded pleadings" do not constitute judicial admissions).

In *West Run Student Housing Associates, LLC v. Huntington National Bank*, the plaintiffs alleged that the defendants breached their contract by failing to provide funds under a construction loan agreement. *Id.* at 168. The defendants argued that the plaintiffs' breach of contract claim should be dismissed because the number of pre-sold condominium units listed in the complaint established that they had sold an insufficient number of units to require the defendants to disburse additional funds pursuant to the construction loan agreements. *Id.* In response, the plaintiffs filed an amended complaint which omitted the facts about the number of pre-sold units. *Id.* at 169. The defendants filed a motion to dismiss, arguing that the prior statements about the number of units were admissions, and the district court granted the motion. *Id.*

The Third Circuit reversed the district court's ruling that the unit pre-sale numbers listed in the superseded original complaint were binding judicial admissions. *See id.* at 169. The circuit court commented that "[p]laintiffs routinely amend complaints to correct factual inadequacies in response to a motion to dismiss," and "[t]hat is even so when the proposed amendment flatly contradicts the initial allegation." *Id.* at 172. The Third Circuit further held that "at the motion to dismiss stage, when the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint." *Id.* at 173. The Third Circuit noted that "at the summary judgment stage, a district court may consider a statement or allegation in a superseded complaint as rebuttable evidence when determining whether summary judgment is proper." *Id.* at 173. The circuit court vacated and remanded the matter to "give Plaintiffs a chance to provide evidence showing that the pre-sale numbers in the

11

original complaint were incorrect (as they now claim) and that the real numbers meet the contractual requirements." *Id.*

Pursuant to *West Run*, a plaintiff's withdrawn pleadings may be offered as evidence "rebutting a subsequent contrary assertion" at summary judgment or trial. *See id.* at 173; *see also 188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) ("Under some circumstances, a party may offer earlier versions of its opponent's pleadings as evidence of the facts therein, but they are not judicial admissions, and the amending party may offer evidence to rebut its superseded allegations.") (citing *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 719 (7th Cir. 1998)). Defendants appear to rely on Plaintiff's prior complaints,[2] the Use of Force Reports, the investigator's report, and the video footage, and argue that there is no credible evidence to support Plaintiff's current version of events. Defendants, however, ignore Plaintiff's sworn deposition testimony stating that he was assaulted by Officer Jacobs prior to the incident for which there is video footage. Moreover, Plaintiff's attorney Mr. Kober submitted a sworn certification with the motion to amend, in which he averred that he failed to get the facts right in the prior complaints and sought to amend to conform the pleadings to Plaintiff's deposition testimony.

In order to rule in Defendants' favor and find that the first assault by Officer Jacobs did not occur, the Court would have to disregard Plaintiff sworn deposition testimony or find it incredible, which is not appropriate at the summary judgment stage. Plaintiff's assertion of contrary facts is not without consequence, however, as it may lessen his credibility before the jury. *See Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002), "[a] statement in a withdrawn

---

[2] Defendants also claim that Plaintiff's grievances and medical history show that he "did not act like an injured victim" because he only wrote one grievance and did not take his prescribed medication. (*See* Defendants' Brief at 7.) This evidence goes to the extent of Plaintiff's injuries and not to whether any of Defendants used excessive force.

complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission," although "the factfinder may very well find that such a contradictory statement reduces the credibility of the witness"), overruled in part on other grounds by *Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006). On this record, the withdrawn complaints do not provide a basis for granting summary judgment to Defendants.

Defendants are also not entitled to summary judgment with respect to the alleged second assault, which is captured on video. To prevail on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015) (emphasis in *Jacobs*). Objective reasonableness turns on the "facts and circumstances of each particular case." *Kingsley*, 576 U.S. at 397 (citation and quotation omitted). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* (citation omitted). Those circumstances include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. "Thus, a court must consider the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (quotations omitted) (citing *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

13

Defendants contend that "all available evidence shows that Defendants acted appropriately using minimal necessary force to apprehend" Plaintiff. (ECF No. 54-5, Defendants' Brief at 7.) As explained above, however, the Court is not free to ignore Plaintiff's deposition testimony or weigh the evidence. Notably, Defendants have not provided the Court with a working copy of the video footage on which they rely. In addition, Defendants have not addressed the standard of review for excessive force claims involving reliable video footage, which requires the court to view the facts in the light most favorable to Plaintiff unless that version is "blatantly contradicted by the video footage." *Jacobs*, 8 F.4th at 192 (cleaned up). Even assuming that the video footage would be reliable, Defendants have not provided a working copy of that video or addressed whether Plaintiff's deposition testimony regarding the second assault is blatantly contradicted by the video footage. As such, Defendants are not entitled to summary judgment with respect to the alleged second assault.

## IV.  CONCLUSION

For the reasons explained in this Opinion, the Court denies without prejudice Defendants' motion for summary judgment. The Court refers this matter to the Magistrate Judge for settlement and directs the Clerk of the Court to administratively terminate this case pending the outcome of the settlement discussions. An appropriate Order follows.

DATED: October 24, 2024

GEORGETTE CASTNER
United States District Judge