**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VAUGHN COLLINS,<br><br>                    Plaintiff,<br><br>       v.<br><br>MONMOUTH COUNTY CORRECTIONAL INSTITUTE, *et al.*,<br><br>                    Defendants. | Civil Action No. 21-2034 (GC) (JTQ)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court on a Motion for Reconsideration, which was docketed as a Motion for Judgment on Partial Findings and to Amend/Correct, filed by Defendants Monmouth County Correctional Institution ("MCCI"), Monmouth County, Officer B. Jacobs, Officer FNU Ruchalski, Officer S. Giglio, Supervisor F. Giammarino, and Investigator James Robertson. (ECF No. 64 ("Motion for Reconsideration").) Defendants ask this Court to reconsider its Order (*see* ECF No. 60 ("October 24, 2004 Order")) and Opinion, *see Collins v. Monmouth Cnty. Corr. Instit.*, No. 21-2034, 2024 WL 4563908 (D.N.J. Oct. 24, 2024) ("October 24, 2024 Opinion"), denying their Motion for Summary Judgment without prejudice and to "respectful[ly] draft" an amended opinion and order that "reflects judicial review of the subject video evidence" (ECF No. 64-2 at 6). Plaintiff Vaughn Collins opposed the Motion for Reconsideration. (ECF No. 66.) The Court entered a text order directing the parties to submit a joint letter confirming that the video in the possession of the Magistrate Judge is the video that Defendants are asking the Court to review for purposes of deciding their Motion for Reconsideration and that neither Plaintiff

nor Defendants have any objection to the Court reviewing the video that was submitted to the Magistrate Judge for purposes of deciding Defendants' Motion for Reconsideration. (ECF No. 68.) The parties submitted the requisite joint letter (ECF No. 69), and the Court has considered the video for purposes of deciding the Motion for Reconsideration.

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motion for Reconsideration is **DENIED**.

I.    <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

As the Court explained in its October 24, 2024 Opinion, Plaintiff claims that he was assaulted twice at the MCCI in the early morning hours of October 29, 2020 as follows: (1) Officer Jacobs punched him in the mouth, dislodging his tooth, grabbed his hair and pulled a dread out, and punched him in his ear, causing bleeding and a laceration; and (2) Officer Jacobs subsequently grabbed his jumper causing him to fall to the ground, put Plaintiff in a chokehold and pulled Plaintiff down on top of him, and Officer Giglio then ran over and started punching Plaintiff in the face, resulting in a "busted" nose. (*See* ECF No. 56-3 at T13:8-18, T14:18-20, T28:12-29:6, T36:11-12, T36:19-21, T54:15-25, T60:13-22, T61:9-16, T70:13-12; ECF No. 37-4 ¶¶ 30-39, 40, 43); *Collins*, 2024 WL 4563908, at *1-4.

On October 16, 2023, Defendants moved for summary judgment. (ECF No. 54.) Defendants cited to video footage of the second incident as Exhibit A to their summary judgment motion, together with "Exhibit D: Defendants attorney certification of observation of factual elements of video evidence." *Collins*, 2024 WL 4563908, at *4 & n.1. In a letter dated October 16, 2023, Defendants' counsel notified the Honorable Douglas E. Arpert, U.S.M.J., that he was

unable to "upload[] electronically" Exhibit A.  (ECF No. 64-4 ("October 16, 2023 Letter") at 1.) Counsel stated that, with Plaintiff's counsel's consent, "the Exhibit A video . . . will be mailed in the form of a USB stick."  (*Id.*)

Magistrate Judge Arpert conducted a telephone status conference on December 19, 2023. According to the certification submitted by Defendants' counsel in support of the Motion for Reconsideration, the video "appeared to have been viewed in 2023 by Magistrate Judge Arpert." (ECF No. 64-1 ("Certification") ¶ 4.)

On May 21, 2024, the Court administratively terminated the summary judgment motion because Defendants "did not provide a copy of the video footage to the Court."  *Collins*, 2024 WL 4563908, at *4 (citing ECF No. 64-4).  The Court directed Defendants to provide the video evidence within 14 days.  *Id.*  Defendants' counsel wrote to the Honorable Justin T. Quinn, U.S.M.J.,[1] asking for an extension of time until June 17, 2024, and the Court received a copy of the video evidence in June 2024.  *Id.*  According to his June letter to Magistrate Judge Quinn, defense counsel had just become aware of the Court's request for "an additional copy of the video evidence that was originally supplied to the Court via mail on or around October 16, 2023."  (ECF No. 58 ("June 14, 2024 Letter") at 1.)  In his Certification, Defendants' counsel states that he was advised by Magistrate Judge Quinn's Courtroom Deputy that this (second June 2024 copy of the) USB disc drive was received and that she agreed to let him know if the Court required anything further.  (ECF No. 64-1 ¶ 3.)

However, the video file submitted in June 2024 "is corrupted, and the Court is unable to view it."  *Collins*, 2024 WL 4563908, at *4; *see also id.* at *3 ("There is video evidence of this incident; however, the video provided by Defendants has a 'broken index,' and the Court is unable

---

[1] On May 31, 2024, the case was reassigned from Magistrate Judge Arpert, who has retired, to Magistrate Judge Quinn.

3

to view it.").

On October 24, 2024, the Court denied without prejudice Defendants' motion for summary judgment, referred this matter to the Magistrate Judge for settlement discussions, and administratively terminated the case pending the outcome of the settlement discussions. (ECF No. at 1-2.) Because Defendants were given ample opportunity to support their motion, the Court decided the motion for summary judgment without the video footage. *Collins*, 2024 WL 4563908, at *4. It also declined to consider Exhibit D "as a substitute for the actual video footage." *Id.* at *4 n.2.

In its discussion, the Court reiterated its observation that Defendants have not provided the Court with a working copy of the video footage as a reason for rejecting the Defendants' contention that all available evidence showed that they acted appropriately using minimal necessary force in the second incident. *Id.* at *7. It explained that "the Court is not free to ignore Plaintiff's deposition testimony or weigh the evidence" and that "Defendants have not addressed the standard of review for excessive force claims involving reliable video footage, which requires the court to view the facts in the light most favorable to Plaintiff unless that version is 'blatantly contradicted by the video footage.'" *Id.* (quoting *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021)). According to the Court, "[e]ven assuming that the video footage would be reliable, Defendants have not provided a working copy of that video or addressed whether Plaintiff's deposition testimony regarding the second assault is blatantly contradicted by the video footage." *Id.*

In an October 30, 2024 letter addressed to Magistrate Judge Quinn, Defendants' counsel stated that this Court's summary judgment decision was "especially concerning" given the prior discussion regarding the submission of the video evidence. (ECF No. 62 ("October 30, 2024 Letter") at 1.) Specifically, counsel indicated that "we confirmed the court received it, and they

4

agreed to let us know if they needed anything additional in that regard, yet they did not inform us that they could not read the USB drive on which it was submitted until we read this fact in their decision." (*Id.*) He also indicated that Magistrate Judge Arpert referenced viewing the (first October 2023) video in conferences as they discussed proposed settlement amounts, that Magistrate Judge Quinn's Courtroom Deputy "confirmed with [him]" that she remembered receiving the (second June 2024) USB drive and telling him that she would let him know if there were any issues. (*Id.* at 2.) After submitting the second copy, counsel purportedly called Magistrate Judge Quinn's Courtroom Deputy back periodically to inquire about the status of the case and was not told of any defect with the submission. (*Id.*) According to defense counsel, Plaintiff's attorney, while "he was reluctant to co-sign this letter" (which Plaintiff's counsel did not sign), "appears to be in agreement that it would be to the advantage of both parties' ability to reach a negotiated settlement as swiftly as possible, which would be facilitated if there were a judicial opinion which had the benefit of a full review of the video evidence, and related documents." (*Id.* at 1.)

On October 30, 2024, Magistrate Judge Quinn held a telephone status conference and entered a text order scheduling an in-person settlement conference for December 19, 2024. (ECF No. 63.) On the same day, a note was entered on the docket stating that "[t]he thumb drive submitted to the Court on October 30, 2024 will be maintained by Magistrate Judge Quinn's Chambers for purposes of settlement only." On November 5, 2024, Defendants moved for reconsideration. (ECF No. 64.) In support, they submitted their counsel's Certification and copies of the prior certification counsel submitted in support of the prior motion for summary judgment, the October 16, 2023, June 14, 2024, and October 30, 2024 correspondence, and this Court's October 24, 2024 Opinion. (ECF Nos. 64-1, 64-3, 64-4, 64-5, 64-6, 64-7.) Defendants did not

5

provide a copy of the video. Plaintiff filed a brief opposing the Motion for Reconsideration. (ECF No. 66.)

On January 21, 2025, the Court entered a text order stating the following:

> This matter comes before the Court based on Defendant Monmouth County Correctional Institution's Motion for Reconsideration (ECF No. 64). Plaintiff and Defendants are ORDERED to submit a joint letter within 7 days of the date of entry of this Text Order confirming that: (1) the video in Magistrate Judge Quinn's possession (see Clerk's Note Entered October 30, 2024) is the video that Defendant is asking the Court to review for purposes of its Motion for Reconsideration (ECF No. 64); and (2) that neither Plaintiff nor Defendants have any objection to the Court reviewing the video that was submitted to Magistrate Judge Quinn in October 2024 for purposes of the Defendant's Motion for Reconsideration.

On January 28, 2025, the Court received a joint notice stating that neither counsel for Plaintiff nor Defendants' counsel object to the Court reviewing the video submitted to Magistrate Judge Quinn in October 2024 for purposes of ruling on the Motion for Reconsideration. (ECF No. 69 at 1.) The Court has received and reviewed the video submitted to Magistrate Judge Quinn in October 2024.

## II.   DISCUSSION

Reconsideration is appropriate only "if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [denied] the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Local Civil Rule 7.1(i) requires the party seeking reconsideration to file a brief setting forth "the matter or controlling decisions which the party believes the Judge has overlooked." "The word 'overlooked' is the operative term in the Rule."

*Bowers v. NCAA*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) (citation omitted)). "A court commits clear error of law 'only if the record cannot support the findings that led to that ruling.'" *United States v. Mattia*, No. 21-576, 2024 WL 3540448, at *2 (D.N.J. Jul. 25, 2024) (quoting *ABS Brokerage Servs. v. Pension Fin. Servs., Inc.*, No. 09-4590, 2010 WL 2357992, at *6 (D.N.J. Aug. 16, 2010)), *appeal filed*, No. 24-2589 (3d Cir. Aug. 23, 2024). "Moreover, when the assertion is that the Court overlooked something, the Court must have overlooked some dispositive factual or legal matter that was presented to it." *Id.* at *2 (citing L. Civ. R. 7.1(i)).

Reconsideration is an extraordinary remedy, *see United States v. Hough*, No. 02-649, 2011 WL 900111, at *1 (D.N.J. Mar. 15, 2011), and the scope of a motion for reconsideration is "extremely limited," *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone*, 664 F.3d at 415 (citing *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)). "Because the requirements are so stringent, motions for reconsideration typically are not granted." *CPS MedManangement LLC v. Bergen Reg'l Med. Ctr.*, 940 F. Supp. 2d 141, 168 (D.N.J. 2013) (quoting *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)).

Defendants argue that reconsideration is required on the grounds of new evidence, to correct a clear error of law or fact, and to prevent manifest injustice. (ECF No. 64-2 at 4-5.) According to them, their counsel has established in his Certification and the attached exhibits that a conscientious effort was made "to provide and document the submission of a key and material element of evidence that depicts, first hand, an incident which defendants believe will show they acted appropriately to restrain the defendant." (*Id.* at 5.) They further contend that Plaintiff agrees that an opinion reflecting judicial review of the video evidence would facilitate settlement

7

discussions. (*Id.*) Defendants assert that the October 24, 2024 Opinion did not reference the fact that the video evidence was successfully submitted, and they argue that an injustice would occur if "such material and probative evidence that was known to and that should, or could have been available to the Court, is not reviewed." (*Id.* (citing *Max's Seafood Café*, 176 F.3d 669).) They further indicate that "the fact that the video appeared available and in the Court's possession in 2023 appears to have, respectfully, been overlooked in the October 24, 2024 Order." (*Id.* at 6 (citing *Student Pub. Int. Grp. v. Monsanto Co.*, 727 F. Supp. 876 (D.N.J.), *aff'd*, 891 F.2d 283 (3d Cir. 1989); *Bowers*, 130 F. Supp. 2d 610).

Plaintiff opposes reconsideration on the grounds that the high standard for reconsideration has not been met. (ECF No. 66 at 4.) According to him, this is not a case where failure to view the video would result in a manifest factual misinterpretation because the video—which captured only the second of two distinct incidents and "shows tiny, blurry officers running towards a tiny, blurry cell door" and is inconclusive as to who first used force or whether Plaintiff charged Officer Jacobs as the officer claimed—does not "blatantly contradict" Plaintiff's sworn account of the second incident. (*Id.* at 3-4.)

The Court agrees with Plaintiff that Defendants have failed to satisfy the high standard for reconsideration. Initially, the video does not constitute new evidence that was unavailable at the time the Court denied Defendants' motion for summary judgment.[2] *See Minnebo v. Metal Supermarkets Franchising Am. Inc.*, No. 22-5999, 2024 WL 1928458, at *2 (D.N.J. Apr. 30, 2024) ("[T]here is a strong policy against entertaining motions for reconsideration based on evidence that was readily available at the time the original motion was heard." (alteration added) (quoting *S.C. ex rel. C.C. v. Deptford Twp. Bd. of Educ.*, 248 F. Supp. 2d 368, 381 (D.N.J. 2003)). The

---

[2] Defendants do not claim that they are entitled to reconsideration based on an intervening change in the law. *See Max's Seafood Café*, 176 F.3d at 677.

parties and the Court were aware of the video evidence, which Defendants cited in support of their summary judgment motion. *See Collins*, 2024 WL 4563908, at *4. The Court specifically ordered Defendants to submit the video evidence, but the copy that was provided to the Court was corrupted and could not be viewed. *Id.*

Defendants indicate that the Court overlooked their efforts, through counsel, to provide the Court with a working version of the video footage and the apparent fact that a copy of the video was in the Court's possession in 2023. (ECF No. 64-2 at 4-6.) However, this Court did not overlook such efforts, which were unsuccessful. In its October 24, 2024 Opinion, the Court acknowledged that, after it entered the text order on May 21, 2024 directing them to provide the video evidence within 14 days, "[o]n June 14, 2024, Defendants wrote to the Magistrate Judge seeking an extension of time until June 17, 2024, to provide the video evidence." *Collins*, 2024 WL 4563908, at *4 (citing ECF No. 58). "The Court subsequently received a copy of the video evidence, but the file is corrupted, and the Court is unable to view it." *Id.* Defendants do not dispute that the copy submitted in June 2024 was unworkable.

As to the alleged submission of a prior copy of the video in October 2023, the Court notes that the October 16, 2023 Letter merely stated that "the Exhibit A video . . . will be mailed in the form of a USB stick." (ECF No. 64-6 at 1.) There is no contemporaneous record evidence or docket entry showing that the USB stick was received. With respect to counsel's claims that Magistrate Judge Arpert possibly viewed the 2023 copy of the video, this claim was first mentioned on the record in the October 30, 2024 Letter, after the entry of the Court's October 20, 2024 Opinion and Order. (ECF No. 62 at 1.) As Defendants acknowledge, Magistrate Judge Arpert retired, and Magistrate Judge Quinn was assigned to this case in May 2024. (*See* ECF No. 64-2 at 3.) In any event, there is no evidence indicating that the Undersigned was provided a working

9

copy of the video footage prior to the filing of Defendants' Motion for Reconsideration.

Furthermore, it was not the responsibility of either this Court, the Magistrate Judge, or judicial staff to track down a working copy of the June 2024 video footage or to notify Defendants of any problem prior to ruling on their summary judgment motion. As the moving parties, Defendants had to present a properly supported motion for summary judgment demonstrating the lack of a genuine dispute as to any material fact and that the movants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c)(1)(A) (stating that party asserting that a fact cannot be genuinely disputed must support the assertion by citing to "particular parts of materials in the record"); *Collins*, 2024 WL 4563908, at *5 ("Once a *properly supported* motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial." (emphasis added) (citation omitted)). This Court concluded that Defendants failed to satisfy their burden, *Collins*, 2024 WL 4563908, at *5-7, and Defendants Motion for Reconsideration has provided no basis for the Court to re-examine this determination.

In fact, Defendants have failed to show that, even if the Court had received a working copy of the video footage, it would have resulted in the Court granting their summary judgment motion. *See Matta*, 2024 WL 3540448, at *2 (stating that court commits clear error of law only if the record cannot support the findings that led to the ruling and that, when the party asserts that the Court overlooked something, it must have overlooked a dispositive factual or legal matter). First, this case involves two alleged assaults in the morning of October 20, 2020; it is undisputed that the video only captured the second incident. *See Collins*, 2024 WL 4653908, at *6-7. Second, this Court denied summary judgment on the alleged second assault because, in addition to failing to provide a working copy of the footage, "Defendants have not addressed the standard of review for

excessive force claims involving reliable video footage, which requires the court to view the facts in the light most favorable to Plaintiff unless that version is 'blatantly contradicted by the video footage.'" *Id.* at *7 (quoting *Jacobs*, 8 F4th at 192).  In their Motion for Reconsideration, Defendants do not mention this conclusion.  And, they do not address "whether Plaintiff's deposition testimony is blatantly contradicted by the video footage." *Id.*  On the contrary, they merely assert that the video "depicts, first hand, an incident which defendants believe will show they acted appropriately to restrain the defendant."  (ECF No. 64-2 at 5.)  Such a conclusory assertion is insufficient to satisfy the applicable "blatantly contradicted" legal standard.

Finally, based on the Court's own review of the footage, the video evidence does *not* blatantly contradict Petitioner's deposition testimony regarding the second alleged assault.  As this Court explained in its October 24, 2024 Opinion:

> Another 5-10 minutes later, Officer Jacobs returned to the tier accompanied by Officer Giglio.  (CSMF [ECF No. 56-2] ¶ 38 (citing Pl. Dep. [ECF No. 56-3] T34:15-17).)  Officer Giglio stayed by the microwave, and Officer Jacobs came to the pen,  (CSMF ¶¶ 39-40 (citing Pl. Dep. T34:18-22; T34:23).)  Plaintiff testified that he stayed by his cell door and never left his cell door.  (CSMF ¶ 41 (citing Pl. Dep. T34:23-25, 35:1-2).)  As Officer Jacobs made his way to Plaintiff's cell, Officer Giglio began putting on his gloves.  (CSMF ¶¶42-43 (citing Pl. Dep. T35:3-4; T35:7-11).)
>
> Officer Jacobs told Officer Ruchalski to open Plaintiff's cell door, and the door opened.  (CSMF ¶¶ 44-45 (citing Pl. Dep. [ECF T36:13-18; T36:11-12).  Plaintiff testified that when his cell door opened, Officer Jacobs grabbed his jumper and fell on the ground.  (CSMF ¶ 46 (citing Pl. Dep. T36:19-21).)  According to Plaintiff's testimony, Officer Jacobs put Plaintiff in a chokehold and pulled Plaintiff down on top of him.  (CSMF ¶¶ 47-48 (citing Pl. Dep. T36:19-22; T60:13-22).)  Officer Jacobs pulled Plaintiff down to the ground outside the cell. (CSMF ¶ 49 (citing Pl. Dep. T60:18-21).)  Plaintiff testified that Officer Giglio ran over to his location and started punching him.  (CSMF ¶ 50 (citing Pl. Dep. T60:18-23).)  Plaintiff further testified that Officer Giglio punched him in the face multiple times, resulting in a "busted" nose.  (CSMF ¶ 51 (citing Pl. Dep, T61:9-16).)  Plaintiff testified that he never resisted the

11

> officers. (CSMF ¶ 52 (citing Pl. Dep. T63:13-14).) . . .

As Plaintiff notes (ECF No. 66 at 4), the footage does not clearly refute (or confirm) Plaintiff's sworn testimony that Officer Jacobs grabbed Plaintiff's jumper, fell to the ground pulling Plaintiff down on top of him, and put Plaintiff in a chokehold (Plaintiff's cell appears too far away from the camera, the view is partially obstructed by both a table as well as a railing, and the area immediately adjacent to the cell is on a lower level than the camera). In fact, the video appears to show an officer who ran over to the location punching Plaintiff. It is also unclear whether most officers were (or were not) wearing gloves (and, in fact, at least one of the officers does seem to have gloves on his hands).

In sum, the Court finds that Defendants have failed to meet the stringent requirements for obtaining the extraordinary remedy of reconsideration. *See Hough*, 2011 WL 900111, at *1; *CPSMedManagement.*, 940 F. Supp. 2d at 168. Defendants have not shown that the Court overlooked a dispositive legal or factual matter or issue, an intervening change in the controlling law, new evidence that was not available when the Court denied their motion for summary judgment, or the need to correct a clear legal or factual error or to prevent manifest injustice. *See Max's Seafood Café*, 176 F.3d at 677; *Bowers*, 130 F. Supp. 2d at 612.

### III.   CONCLUSION

For the reason set forth above, and other good cause shown, Defendants' Motion for Reconsideration is **DENIED**. An appropriate Order follows.

Dated: June 25, 2025

*/s/ Georgette Castner*
_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**